1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CURTIS A. MARTEN

                Plaintiff,

       v.

DR. HENRY RICHARDS, *et al*.,

                Defendants.

Case No.  C09-5733RBL/JRC

REPORT AND
RECOMMENDATION

**NOTED FOR**:
June 25, 2010

       This Civil Rights Action filed pursuant to 42 U.S.C. § 1983 has been referred to the

undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and

Local Magistrate Judges' Rules MJR 1, MJR 3, and MJR 4.

       Before the court is defendants Kelly Cunningham's and Cathi Harris' motion for summary

judgment based on the affirmative defense of qualified immunity.  Mr. Cunningham is the

Superintendent of the Special Commitment Center ("SCC") and Ms. Harris is an Associate

Superintendent.  Defendants claim that they are entitled to qualified immunity for their decision

REPORT AND RECOMMENDATION- 1

to implement a policy that plaintiff and the other residents of SCC should not be watching R-rated television shows.  Preventing a sexually violent predator from watching R-rated television does not violate his constitutional rights.  Therefore, this court recommends that defendants' motion be GRANTED.

FACTS

In 2009, the Department of Social Health Services placed a parental block on cable television coming into the Special Commitment Center ("SCC").  The SCC is a treatment facility for persons who have been civilly committed as sexually violent predators or persons who have or are now facing civil commitment proceedings as sexually violent predators.  Mr. Marten is civilly committed pursuant to Wash. Rev. Code 71.09.

This television block prevents the showing of programming with a rating of R, MA ("Mature Audiences Only"), or higher and prevents certain channels from working late at night.

Defendants note that:

> According to the Motion Picture Association of America, an R-rated movie may include adult themes, adult activity, hard language, intense or persistent violence, sexually-oriented nudity, drug abuse or other elements. According to the TV Parental Guidelines Monitoring Board, a television program with a MA rating may contain one or more of the following: crude indecent language, explicit sexual activity, or graphic violence.

(Dkt. # 17, page 2, citations omitted).

Associate Superintendent Cathi Harris submitted an affidavit in which she states that the parental block was put in place because SCC officials were concerned about inappropriate television content coming into the institution.  She states that the television content was "not conducive or appropriate for the maintenance of a therapeutic environment for engaging in sex-offender treatment."  (Dkt. # 18, page 2).  She further states that the treatment providers used

REPORT AND RECOMMENDATION- 2

their professional judgment in putting the parental block in place (Dkt. # 18, page 1-2).  Plaintiff

has responded and defendants have replied (Dkt. # 20 and 26).

STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The moving party is entitled to

judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

essential element of a claim on which the nonmoving party has the burden of proof.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not

lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant

probative evidence, not simply "some metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific

Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party

must meet at trial, e.g., preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at

254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or

controversy in favor of the nonmoving party only when the facts specifically attested by the

party contradict facts specifically attested to by the moving party. Id.  Conclusory, nonspecific

REPORT AND RECOMMENDATION- 3

statements in affidavits are not sufficient, and "missing facts" will not be "presumed." <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990).

DISCUSSION

A person who is the subject of involuntary civil commitment is not entitled to exercise his constitutional rights in the same manner as other citizens. The exercise of those rights is subject to reasonable standards. Those standards were enunciated in <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982). The <u>Youngberg</u> Court stated:

> We think the standard articulated by Chief Judge Seitz affords the necessary guidance and reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints. He would have held that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." 644 F.2d, at 178. Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. Cf. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). At the same time, this standard is lower than the "compelling" or "substantial" necessity tests the Court of Appeals would require a State to meet to justify use of restraints or conditions of less than absolute safety. We think this requirement would place an undue burden on the administration of institutions such as Pennhurst and also would restrict unnecessarily the exercise of professional judgment as to the needs of residents.
>
> .  .  .
>
> For these reasons, the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

<u>Youngberg</u>, 457 U.S. at 321-23.

A state official performing a discretionary function is entitled to qualified immunity from damages unless they violate clearly established law that a reasonable person should have known. When a defendant raises qualified immunity, the court must decide two issues: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so,

REPORT AND RECOMMENDATION- 4

1    whether the right was "clearly established" at the time of the defendant's alleged misconduct.

2    Saucier v. Katz, 533 U.S. 194, 201 (2001) *overruled on other grounds* by Pearson v. Callahan,

3    __ U.S. __ 129 S. Ct. 808 (2009). Qualified immunity applies unless the official's conduct

4    violated such a right. Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d

5    523 (1987). The district court now has discretion as to the order in which it will consider the two

6    prongs above.  Pearson v Callahan,  ___ U.S. ___ 129 S. Ct. at 821 (2009).

7

8        Several reported cases consistently have ruled that prisoners do not have a constitutional

9    right to view sexually oriented material.  *Jewell v. Gonzales*, 420 F. Supp. 2d 406, 438 (W.D.

10   Pennsylvania 2006);*Waterman v. Farmer*, 183 F.3d 208 (3rd Cir. 1999). The defendants have also

11   cited to and provided copies from several unreported cases from this court.  Those cases

12   consistently have held that a civilly committed sex offender does not have a constitutional right

13   to view R-rated materials.  In Spicer v. Richards, 07-CV- 5109FDB, Judge Franklin Burgess

14   considered a Report and Recommendation from Magistrate Judge Karen Strombom.  In the

15   Report and Recommendation the court noted that:

16

17        Plaintiff alleges that Defendant has violated his freedom of speech by
18     restricting the books, magazines or movies he may view, even though he is not in
        treatment. (Dkt.# 6, ¶ 8). In his motion for declaratory relief, Plaintiff argues that
19     the term "sexually orientated" in SCC's policy is vague, overly broad and renders
        application of Policy 208 (Sexually Explicit and Related Material )
20     unconstitutional. (Dkt. # 12, p. 3; Dkt. # 13, Exh. 2, Policy 208). Plaintiff further
        argues that different standards should apply to persons who are not in treatment.
21     (Id., p. 4). In support, Plaintiff attaches emails between SCC staff members
        discussing application of SCC Policy 208 to written materials and television
22     programs. (Dkt.# 12, Exh. 4). Plaintiff maintains that Policy 208 is
        unconstitutional as applied because mailroom staff deny magazines containing
23     certain images as "not appropriate for the treatment environment" when these
        same images can be viewed on tv or newspaper." (Dkt.23, p. 3).

24

25        In the civil commitment setting, a patient's liberty interests are balanced
        against the relevant state interests to determine whether the state has violated the
26     patient's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 318 (1982).
        The law generally requires a careful balancing of the rights of individuals who are

REPORT AND RECOMMENDATION- 5

detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility. See also, *Hydrick v. Hunter*, 500 F.3d 978, 990 (9th Cir.2007) (citing *Youngberg*, 457 U.S. at 319-22):

> In weighing those interests, it cannot be ignored that, unlike the plaintiff in *Youngberg*, who was civilly committed because of mental infirmities, SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others. Therefore, the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons.

*Hydrick*, 500 F.3d at 990.

Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817 (1974). Similarly, First Amendment challenges of SCC policies must be analyzed in terms of the legitimate polices and goals of SCC's treatment program.

The undisputed evidence reflects that the SCC is a total confinement treatment facility designed for persons whom a state court has committed or found probable cause to detain as sexually violent predators under section 71.09.020(13). "(I)t is irrefutable that the State has a compelling interest both in treating sex predators and protecting society from their actions." *In re Young*, 122 Wash.2d 1, 26, 857 P.2d 989, 1000 (1993). "The treatment needs of (the SVP) population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act." See Wash.Rev.Code 71.09.010.

Although Plaintiff argues that Policy 208 cannot be applied equally to the written materials received by SCC residents and DVD movies or television shows that residents may view, this does not lead to the conclusion that the policy is not rationally related to the state's legitimate interest in maintaining institutional security and a therapeutic treatment environment. The state's interest in providing comprehensive treatment to sexually violent predators outweighs Plaintiff's interest in viewing counter-therapeutic material which could interfere with the state-mandated treatment program or which could ultimately endanger the public, SCC residents and staff.

The Honorable Judge Burgess granted the defendants' motion for summary judgment.

In 2005, Magistrate Judge Strombom also considered SCC's limiting access to R-rated movies and recommended to Judge Ronald B. Leighton that the practice was a constitutional exercise of the mental health care provider's professional judgment. <u>Cappello v. Seling</u>, 02-CV-

REPORT AND RECOMMENDATION- 6

5242RBL (Dkt. # 451, Report and Recommendation Re, Dale Davis).  The Report and

Recommendation states:

> It does not logically follow that everything an inmate gets should be automatically given to residents.  An example is the movie claim in this case.  The Supreme Court has made it clear that states have wide latitude in developing treatment regimes for sexually violent predators.  <u>Kansas v. Hendricks</u>, 521 U.S. 346, 368, n.4 (1997) (citing <u>Youngberg v. Romeo</u>, 457 U.S. 307, 317 (1982)).  Here, a clinical decision about the types of movies that will be available has been made.  (Dkt. # 407 attachments).  R-rated movies which depict more sex or violence than movies rated PG or G, are not allowed.

Judge Leighton granted defendants' motion for summary judgment (<u>Cappello v. Seling</u>, 02- CV- 5242RBL (Dkt. # 459)).

Most recently, in 2008, Magistrate Judge Strombom prepared a similar Report and Recommendation for Judge Robert Bryan that considered the constitutionality of SCC policy 208.  Judge Bryan also granted defendants' motion for summary judgment.  (<u>Stewart v. Richards</u>, <u>et al.</u>08-CV-5275RJB (Dkt. # 27)).

There is no clearly established constitutional right to view R-rated materials.  To the contrary, all of the case law appears to be to the contrary.  The Supreme Court has made it clear that states have wide latitude in developing treatment regimes for sexually violent predators. <u>Kansas v. Hendricks</u>, 521 U.S. 346, 368, n.4 (1997) (citing <u>Youngberg v. Romeo</u>, 457 U.S. 307, 317 (1982)).  This policy falls within this wide latitude for the reasons stated above.  Therefore, defendants' motion for summary judgment should be GRANTED.

<u>CONCLUSION</u>

Defendants' motion for summary judgment should be GRANTED.  The action should be DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

REPORT AND RECOMMENDATION- 7

objections. See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 25, 2010, as noted in the caption.

Dated this 1st day of June, 2010.


J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION- 8